ILLINOIS CENTRAL RAILROAD CO. *v.* QUITMAN JAMES.

[58 South. 648.]

CARRIERS. *Transportation of dead bodies. Punitive damages. Sufficiency of evidence.*

In a suit for punitive damages, wherein gross negligence is charged on the part of the railroad employees which resulted in the dropping of a box containing the corpse of plaintiff's child while loading the same into a baggage car, evidence *held* not sufficient to charge the defendant's employees with wantonness, recklessness or wilfulness, such as to warrant the infliction of punitive damages.

APPEAL from the circuit court of Lincoln county.
HON. D. M. MILLER, Judge.

Suit by Quitman James against the Illinois Central Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Mayes & Longstreet,* for appellant.

The case is of more than passing interest for several reasons, not the least one being that so far as we have been able to discover after an exhaustive investigation of the authorities, this is the first case in which a recovery has been obtained on the grounds disclosed by the proof. The legal status of dead human bodies and the extent and nature of the rights in them of living relatives is an interesting question and has been the theme of many scholarly dissertations and learned disputations. Under the common law the corpse of a human body was not regarded as property, and this view has also been adopted in some of the states of this country. This theory has been interestingly and forcibly announced in the leading case of *Long* v. *Railroad Co.,* 6 L. R. A. (N. S.) 883, in which case the court held that the parents of an infant child are not entitled under the law to recover damages for mental pain and anxiety caused by the mutilation of the dead body of the infant. The court adopts the common law rule that there can be no such thing as property in human remains, and, therefore, no action for civil damages will lie, even for wilful mutilation of a dead body. Though the reasoning in this case is plausible and strong and is supported by precedents and authorities, and though, if adopted by this court it would be decisive in the present case in favor of appellant, we are frank to say that the conclusion reached by the court does not commend itself to us, and we would not be understood as urging this court to adopt the principle that there can be no right of possession or ownership in a human corpse.

In the case of *Hochheimer* v. *Railroad Co.,* 74 S. W. 222, the court held that while there is a legal right in the bodies of the dead which the courts will recognize and protect, there can be no recovery for mental anxiety

caused by the dead body of a relative being thrown from a wagon by the negligent operation of a railroad train, in the absence of any injury to the body.

An interesting case often cited is that of *Larson* v. *Chase,* 14. L. R. A. 88, in which the court, while conceding that there is no strictly commercial property in a human corpse, holds that there is a right of possession and preservation for burial purposes, and allowed damages for mental suffering on proof of the unlawful mutilation and dissection of a dead body. Of course, the wrong in the Larson case was not only unlawful, but was consciously and purposely done; was an act or undoubted wantonness and wilfulness.

In the opinions in these leading cases are found exhaustive reviews and discussions of the law, both ecclesiastical and common, and as modified by some of our courts, though most of this, so far as the present case is concerned, is interesting merely from an academic standpoint. A very careful and thorough examination of the authorities failed to reveal a single case where upon any theory damages were allowed where, as in the present case, there was no injury or mutilation of the corpse and no pecuniary damage or loss. Our own court has not, so far as we know, declared itself upon the subject of the rights in a human corpse. But so far as the case at bar is concerned, it is immaterial what theory is adopted as under the facts of the case and, under the established law in Mississippi on the subject of punitive damages, the instruction granted the appellee was obviously erroneous and constituted reversible error. The instruction and the only instruction given for appellee was as follows:

"The court instructs the jury for the plaintiff that if they believe from the evidence that the coffin containing the body of plaintiff's child was dropped by the servants and employees of the defendant while they were undertaking to place it upon defendant's baggage car, and

that by reason of such dropping the coffin or box containing same was injured, and the body of the child disarranged, and if they further believe that plaintiff was injured thereby in that he was caused to suffer mental pain and distress if any, and if they further believe the falling of the coffin and such mental pain and distress, if any, were caused on account of the wilful, reckless or capricious negligence, if any, in the handling of the coffin, or moving of the train by the agents and servants of the defendant, then in that case the jury may find for the plaintiff and in their discretion assess exemplary damages not to exceed the amount sued for.''

The only injury that appellee claims, was mental pain and distress occasioned by the falling of the coffin and the disarranging of the body of the corpse. There was no mutilation of the corpse, no delay in funeral arrangements, no pecuniary loss, nothing but the alleged mental distress and anxiety of the appellee.

Now there is no rule of law more firmly settled in Mississippi than the long established and almost universal rule of law that no action lies for the recovery of damages for mere mental suffering, disconnected from physical injury, and not the result of the wilful wrong of the defendant. *Western Union* v. *Rogers,* 68 Miss. 748.

This principle has been often reiterated, and was recently enunciated in the case of *Duncan* v. *Telegraph Co.,* 93 Miss. 503, in which the court says:

''The Rogers case was decided in 1891 and has stood as the law of this state for seventeen years. Since it was decided we have had many sessions of the legislature without any change being made in the law, and we shall not now disturb the decision.''

Appellee does not claim any physical injury to himself. He does not claim there was any mutilation of or injury to the corpse. His sole claim is that he suffered mental anxiety as the result of the falling of the box and the disarrangement of the corpse.

Now, no matter which theory this court may adopt as to the rights in a human corpse, and we shall urge neither of them upon this court, the indisputable fact remains that under the Mississippi law, the authorization of punitive damages is erroneous where the gravamen of the action is mental distress and anxiety alone, unaccompanied by physical injury, unless the act complained of was wilful and wanton.

*Cassedy & Butler,* for appellee.

It is not necessary to present any extended review of the authorities announcing the law applicable to this case.

We contend that so far as this case is concerned, it is immaterial whether this court adopts the rule announced by the Oklahoma court with reference to this class of cases, or whether it adopts the rule announced in such cases as *Larson* v. *Chase,* 14 L. R. A. 85, and *Renihan* v. *Wright,* 9 L. R. A. 514. Under either view, the plaintiff is entitled to recover.

We contend that even though the facts in this case do not show a case for punitive damages, nevertheless mental suffering is an element of damages, and that this case falls within the exception of the recognized rule, that damages for mental suffering cannot be recovered when disconnected from physical injury, where the defendant was guilty of mere negligence.

We concede that the general rule is as announced in *Western Union Telegraph Co.* v. *Rogers,* 68 Miss. 786, 13 L. R. A. 859, 21 Am. St. Rep. 300; *Duncan* v. *Telegraph Co.,* 96 Miss. 500; *Dorrah* v. *Railroad Co.,* 65 Miss. 17; *Pullman Co.* v. *Kelly,* 86 Miss. 102.

There is however, certain well-established exceptions to that rule and some of them are recognized in the leading case of *Dorrah* v. *Railroad, supra*; such for instance as a suit for breach of promise of marriage.

In the recent and well-considered case of *Kurpguit* v. *Kirby,* 88 Neb. 72, 33 L. R. A. (N. S.) 98, and the ex-

tended note to that case, a great many other classes of
cases are pointed out as falling within the exceptions,
such as malicious prosecution, action for criminal con-
versation, digging up the dead body of plaintiff's son,
conductor kissing a female passenger, being deprived of
the remains of the dead body of a daughter by the under-
taker to whose care the body has been committed, the
abduction of children, and in actions by a parent for the
seduction of a daughter, etc.

One of the cases cited by the Nebraska court is *Reni-
han* v. *Wright*, 9 L. R. A. 514. In this case it was held
that mental anguish suffered by the next of kin by rea-
son of a breach by a third person who had contracted
that they would safely keep a corpse until they should
desire to inter the same, may be considered in the as-
sessment of damages for such breach.

Another important case on this subject is *Larson* v.
*Chase*, 14 L. R. A. 85. It was there held that for the
purpose of preservation and burial, the dead body be-
longs to the husband or the wife or next of kin, and
for any infraction of such right an action for damages
will lie; and in such an action recovery might be had
for injury to the feelings and mental suffering resulting
from the wrongful act.

In the Larson case the court said: "It was early set-
tled that substantial damages might be recovered in a
class of torts where the only injury suffered is mental—
as for example—an assault without physical contact. So
too in actions for false imprisonment where the plaintiff
was not touched by the defendant, substantial damages
have been recovered, though physically the plaintiff did
not suffer any actual detriment. In an action for se-
duction, substantial damages are allowed although there
be no proof of actual pecuniary damages, other than the
nominal damages which the law presumes. The same is
true in actions for breach of promise of marriage.
Wherever the act complained of constitutes a violation

of some legal right of the plaintiff which always in contemplation of law causes injury, he is entitled to recover all damages, which are the proximate and natural consequences of the wrongful act."

These are not the only cases by any means that announce this doctrine, but they seem to be well-considered cases, and refer to and elaborate the various rulings by other courts.

So that we say that under the peculiar facts of this case, irrespective of any question of wilful wrong, that mental suffering is and of necessity must be an element of damages. When the railroad company contracted to transport the dead body of plaintiff's child, it knew and of necessity must have known that any injury to it would result in mental anguish and distress, and therefore it cannot be said that such damages were not within the contemplation of the parties at the time they made this contract; hence we say that these damages should be taken into consideration by the jury in estimating the amount.

If, however, the court should conclude that by reason of the doctrine announced in Dorrah, Rogers, Kelly and Duncan cases, that mental suffering was not an element of damages, if the case was one of mere negligence, we are nevertheless under the facts of this case and under the very authority which counsel suggests precludes recovery in any view, entitled to have this element of damages by the jury.

COOK, J., delivered the opinion of the court.

This action is predicated upon the alleged reckless, wanton, and willful negligence of the appellant railroad company in the transportation of the corpse of appellee's two months old infant. The record shows that the box inclosing the corpse was delivered to the agent of the company at Magnolia, to be carried to Martinsville for interment. When the train arrived at the station,

the trunks and other baggage were loaded upon the baggage car from a platform, ten to fifteen feet from the door of the car, the corpse being on the same platform. The train remained at the station three or four minutes, the usual or a little more than the usual time, and the baggage was all safely loaded. The porters, charged with the duty of loading the baggage, then started with the box containing the corpse from the platform to the train, for the purpose of placing it in the baggage car. Here there is some conflict in the evidence; the porters and other railroad employees saying that the train started to move after they had gotten the corpse to the door of the car, while the brother of appellee said it started before they picked it up from the platform. This variance in the testimony is, in our opinion, of very little, if any, importance. Suffice it to say that the train was moving slowly (having run about ten or twelve feet before it was stopped) when the porters attempted to lift the box and place same in the baggage car, and because of some obstruction the box was dropped upon the ground. Appellee did not see this unfortunate accident, and did not know of its occurrence until some time afterwards. The train was then stopped, and the corpse placed in the baggage car. The brother of appellee was requested to go back in the car and examine the corpse, to ascertain if any damage had been done to the dead child. The box and casket were opened, and according to the brother's testimony the little body had been turned completely over upon its face. This was the utmost extent of the damage to or disarrangement of the body, which was remedied and the coffin closed. The father of the child did not know of this inspection of the corpse, but did know of it later, just how long afterwards does not appear. Indeed there is nothing in the record to show when he first heard of the accident, whether the day of its occurrence or some other day.

It is manifest from all the testimony, if there was negligence in moving the train, it is chargeable to the engi-

neer, because he put the train in motion before he received the necessary signal authorizing him to do so, and, had he not done so, the accident would not have occurred. The engineer testified that he was looking out for the signal, and was almost sure the conductor gave him the signal, and would have sworn that he did, but for the fact that the conductor said he did not. This is the substance of his statement. To excuse his mistake, he says the train was being drawn by two locomotives, he being in charge of the one in the lead; that steam was escaping from the rear locomotive and from the steam pipes connected with the heating system of the train. This steam may have interrupted his vision to such an extent as to have induced him to think that the conductor signaled him. The jury returned a verdict for plaintiff below for nine hundred and fifty dollars. This was a very deplorable and harrowing accident, and doubtless all who witnessed it were shocked. The sentiment which recognizes the sanctity of the dead body of a human being is approved by all normal persons as natural, noble, and fine; and if there was any evidence before the jury warranting a belief that the employees of the railroad company were guilty of willful or wanton conduct in the handling of the corpse of this infant, we could not disturb the verdict of the jury.

The trial court instructed the jury that they were authorized to inflict punitive damages if they believed that the accident was caused on account of the willful, reckless, or capricious negligence in the handling of the coffin or moving the train. Counsel for appellee, in closing their brief, say: "The damage done in this case was never claimed to be a matter of dollars and nickels; to the contrary, the entire suit was for the gross carelessness in the handling of the coffin, and sounded in punitive damages, rather than compensative damages. For this reason the injury to the body and the coffin is only material in determining the extent of the violence of the fall, and has nothing to do with the right of recovery."

We have quoted this statement of counsel, because it clearly and succinctly defines the issue before this court. The damage to the box containing the coffin was inconsequential, and the injury to the corpse consisted in turning it over in the coffin. If there was negligence in the handling of the train, upon the engineer must rest the blame. If there was negligence in the handling of the corpse, it is chargeable to the porters.

As all men are fallible, and may be honestly mistaken, and may act upon this mistake without incurring any imputation of carelessness, we feel justified in acquitting the engineer of negligence under the undisputed evidence of two witnesses. True, the witnesses were railroad employees, one of whom has no interest in this controversy. It is also true that the jury, in weighing their testimony, had a right to take into consideration their relationship to the appellant; but we know of no rule of law, or reason which would warrant a jury in discarding the testimony of an employee, when no witness or circumstance contradicts his evidence, and when the facts related by the witness are consistent with reason and the circumstances surrounding the event about which he testifies. The porters were active and zealous in their efforts to place the corpse upon the train, and of this there can be no doubt. But did their zeal lead them into attempting to do a thing which a prudent man would characterize as hazardous in the extreme, or were they performing their duty in a capricious or reckless manner, or were they reckless and indifferent as to the consequences, or were they so grossly negligent as to incur the imputation of willfulness? Upon a proper answer to these questions the decision of this case depends.

The train had just begun to move, either before they litfed the coffin from the platform, or after they reached the door of the baggage car. They were handling the corpse of an infant, which together with the coffin weighed about seventy-five pounds. They were charged

with the duty of placing this corpse upon that train, and they were probably impressed with the importance of getting it on. In spite of the fact that the train was moving slowly, and in spite of the fact that they might have refused to attempt the loading until the train was brought to a standstill, they did put the box up into the car; and because the trunks already loaded were near the door, and obstructed the way, the box slipped and fell to the earth. This is the sum and substance of their offending from the standpoint of appellee.

Why did the porters not succeed in safely placing the box on the train? The answer is made clear by the evidence. The trunks loaded at Magnolia were still near the door, the baggageman not having moved them away, and when the porters placed the box partially in the car, they retained their hold on it, expecting the baggageman to move a trunk and then pull the box inside. The baggageman, seeing the situation, attempted to pull the signal to the engineer to stop the train. In the meantime the porters were walking alongside holding the box, until the train could be stopped, when they ran against a baggage truck and had to release their hold, thus causing the box to fall to the earth. This is clear and indisputable from a careful reading and re-reading of the entire record, and there is no other probable or possible theory deducible from the evidence of all or any one of the witnesses to account for this unfortunate occurrence.

We shall not enter into discussion of the interesting questions of law regarding property rights in dead bodies. This is purely academic and would be profitless. This case must stand or fall upon the issue stated in counsel's brief. If the facts, considered from any angle, warranted the instruction authorizing the jury to inflict punitive damages, this case must be affirmed.

We can see nothing in the evidence upon which a reasonably impartial man could charge any employee with wantonness, recklessness, or willfulness.

*Reversed and remanded.*